

June 22, 2015

Hon. William H. Pauley, III
United States District Judge
United States District Court
Southern District of New York
500 Pearl Street
New York, New York 10007

          Re:    <u>United States v. Keith Buie, 14-CR- 498</u>

      On February 25, 2015, Keith Buie pled guilty pursuant to a plea agreement to a lesser included offense in count one of the indictment, charging him with conspiracy to distribute crack cocaine, in violation of 21 U.S.C. § 841 (b)(1)(B). He is currently scheduled to be sentenced by Your Honor on July 2, 2015. The Probation Department and the government both estimate that Mr. Buie's total offense level is 25, that his criminal history category is IV, and that his corresponding guideline range of imprisonment is therefore 84-105 months. *See* Pre-sentence report (PSR) at ¶¶ 8(c-e), 51, 79, 120. While I do not dispute the Probation Department's calculation, I do respectfully urge the Court to impose a sentence for Mr. Buie below the guideline range. Given the relatively small amount of drugs involved, Mr. Buie's limited participation in the larger conspiracy, the general national trend to reduce the length of incarceration for drug offenders, and his personal characteristics and background, a sentence of 60 months incarceration, the mandatory minimum sentence, is sufficient to satisfy the aims of sentencing set forth in 18 U.S.C. § 3553(a).

### A.   <u>Circumstances of the Offense</u>

      For two months during the spring of 2014, John Williams, the alleged leader of a street level drug dealing operation in the Monroe Houses in the Bronx bought crack cocaine from Keith Buie. Mr. Buie did not live in the Monroe houses and had nothing to do with any of the other people named in the

indictment. Besides selling Williams grams of crack, Mr. Buie played no further role in the charged narcotics conspiracy. Moreover, despite the government's initial proclamations, the amounts Williams bought from Buie during that period were small. The government has characterized Mr. Buie as Williams's "supplier." While technically true in the sense that Williams did, in fact, buy crack from Buie, such a characterization nonetheless is incomplete and misleading because Mr. Buie was no wholesale supplier of crack cocaine. Williams bought "bundles" from Mr. Buie, 8-10 gram amounts, and he did not do so all that often. Indeed, the total amount of crack sold by Buie to Williams was well under 200 grams. In reality, Mr. Buie pled guilty to a conspiracy involving 196-280 grams only because that larger amount was reasonably foreseeable to him, not because he, himself, actually handled such quantities. Nor did Mr. Buie amass significant amounts of crack cocaine himself – he also bought crack only in relatively small quantities. For example, when the government executed its search warrant on Mr. Buie's apartment, his supposed "stash house," it recovered a little more than 8 grams of crack.

None of this is to suggest that Mr. Buie is not culpable for being a drug dealer. He was. It is simply intended to place his misconduct into context – given the length of prison the drug guidelines recommend. Mr. Buie sold small amounts of crack. He did not run or manage drug-dealing operations. He did not oversee others. Perhaps more importantly, he did not engage in violence, he did not rob or hurt people. Indeed, despite Mr. Buie's robust record for drug offenses,[1] he has never been convicted of any crime of violence.[2] Nor has he ever been accused, let alone been convicted, of possessing or using a firearm. Given the prevalence of guns in drug trafficking crimes, this fact is not insignificant. The circumstances of the offense, therefore, do not warrant a term of imprisonment greater than 60 months.

---

[1] It should be noted that Mr. Buie's most recent drug related arrest, on March 19, 2014 (*see* PSRT at ¶ 84), was dismissed. *See* CRIMS printout (Ind. No. 1185/2014) showing dismissal, Exhibit A.

[2] Although in 2011 Mr. Buie was arrested for robbery in the first degree, (*see* PSR at ¶ 82), the case was dismissed by the Grand Jury on the merits. *See* CRIMS printout showing dismissal, Exhibit B.

**B.     A Lengthy Prison Sentence is Not Reasonable Under 18 U.S.C. § 3553(a) Because Long-Term Incarceration for Non-Violent Drug Offenders Serves Little Penological Purpose and Causes Personal and Societal Harm**

The notion that drug sentences are too long and severe in the United States has been recognized by significant portions of the criminal justice community for some time. Indeed, in the face of shrinking crime, excessive costs of incarceration, dubious support for the idea that long sentences offer general deterrence,[3] and the human toll of locking up vast swaths of the population for non-violent crimes, many states began scaling back their drug sentences within the last 10 years. *See* Drew Desilver, "Feds May be Rethinking the Drug War But States Have Been Leading the Way," *Pew Research Center*, 4/2/14, Exhibit D.

This nationwide trend has finally caught up with the federal system, and the purpose and effect of federal drug sentencing is being newly scrutinized. To a degree, this new effort at scaling back draconian sentences that have landed non-violent drug offenders in federal prisons for decades is being spearheaded by the Department of Justice itself. In announcing the Department's "Smart on Crime" initiative in August 2013, Attorney General Eric Holder stated unequivocally: "too many Americans go to too many prisons for far too long, and for no truly good law enforcement reason." Eric Holder Remarks to American Bar Association, August 12, 2013, Exhibit E. Indeed, in 2014, as a first step, the Attorney General also endorsed the Federal Sentencing Commission's plan to reduce the sentencing guidelines almost across the board for all drug offenders by two points, and to make that change retroactive.

Perhaps because the efforts to alter longstanding federal sentencing now come from all sides of the political spectrum, Congress endorsed the Sentencing Commission's reduction of the narcotics guidelines, which went into effect in November 2014. Moreover, both houses of Congress are now considering the bi-partisan Smarter Sentencing Act of 2015, which would significantly reduce the mandatory minimum sentences for drug crimes, as well as expanding the "safety valve" exception to these mandatory minimums. *See* "Lee, Durbin Introduce Smarter Sentencing Act of 2015," http://www.lee.senate.gov/public, 2/12/15.

---

[3] The perhaps understandable notion that more severe sentences enhance public safety and offer a strong deterrent effect has generally been debunked by the scientific community. *See* Wright, Valerie "Deterrence in Criminal Justice: Evaluating Certainty vs. Severity of Punishment," *The Sentencing Project*, November 2010, Exhibit C.

3

Federal judges have also been seeking reform of the draconian sentences called for by the sentencing guidelines or statutory minimums in drug cases. *See e.g. United States v. Diaz*, 2013 WL 322243, at *10 (E.D.N.Y. Jan. 28, 2013, Gleeson, J.) ("[T]he offense guideline for heroin, cocaine, and crack offenses ("drug trafficking offenses") is deeply and structurally flawed. As a result, it produces ranges that are excessively severe across a broad range of cases, including this one. The flaw is simply stated: the Guidelines ranges for drug trafficking offenses are not based on empirical data, Commission expertise, or the actual culpability of defendants. If they were, they would be much less severe, and judges would respect them more.") (internal citations omitted).

In short, participants in the federal criminal justice system across the spectrum have reached the conclusion that sentences for non-violent drug offenders are unreasonably severe – and do not accomplish even the punitive goals of sentencing such as deterrence or just punishment.

It hardly needs to be said that long-term incarceration has a devastating effect on defendants and their families. People are torn from their children and loved ones, and slowly grow old behind bars. I therefore urge the Court to recognize the recent trend in scaling back draconian sentences in drug cases and to determine that a sentence of 60 months would be sufficient and not greater than necessary to satisfy the aims of sentencing enumerated at 18 U.S.C. § 3553(a).

C.  **Mr. Buie's History and Character**

Mr. Buie's story is not unusual, which does not make it any less distressing. Like many young men like him, he was raised by a single mother. His father died in prison when Mr. Buie was five years old – and Keith had no relationship with his father. *See* PSR at ¶ 86. Mr. Buie's mother worked full time, and so he was raised primarily by older siblings or distant relatives. With no real adult supervision in the house, Mr. Buie quickly found himself on the streets. By age 16 he was arrested for the first time, and by age 17 he was convicted of his first drug felony. *See id.* at ¶¶ 55, 57. At nineteen, he pled guilty to being part of a federal drug conspiracy, and was sentenced to 46 months in prison. *Id.* at 61.

Along with his drug-related criminal conduct came other addictions, namely drug use and gambling. Like many other kids with no significant parental involvement in their lives, Mr. Buie began smoking marijuana when he was 13 years old. By age 14, he was smoking daily, and other than during periods of incarceration, he has smoked daily until his arrest last summer. In addition to

4

marijuana, Mr. Buie also abused other drugs, imbibing ecstasy and molly on a regular basis. Between 2005 and 2007, Mr. Buie also became severely dependent on alcohol. *See* PSR at ¶ 101. A gambling addiction presented another challenge to Mr. Buie – and in 2007 he lost essentially all the money he had playing poker. Mr. Buie recognizes that both of these addictions have had seriously destructive effects on his life. He therefore hopes that the BOP will provide him with both drug and gambling counseling and treatment.

Despite this difficult background and life choices that led him down the path of criminality, Mr. Buie appears to be a person well loved and respected by those who know him best. A series of letters attached to this memorandum from family members and friends paint a picture of Mr. Buie that is in stark contrast to the image one has of him based on the indictment or his criminal record. For example, his aunt, Janie Hunt describes his interactions with strangers:

> Keith is a loving kind hearted individual who always smiles and is always willing to lend a helping hand. When he sees an elderly person struggling with groceries or packages, he offers to carry it for them. If he sees the youth fighting, he breaks it up and talk to them and have them shake hands. I wish there were many more young adults like Keith Buie.

Letter from Janie Hunt, Exhibit F. Those observations are echoed by his aunts Dana Ward and Deborah Batts, family friend Deloris Johnson, as well as his niece DionJalen, who vividly reports on the important role Mr. Buie played in her life. *See* Exhibit G.

Those close to him also remark on what a great father Mr. Buie is for his son Kaiden, who is now seven years old. *See* PSR at ¶ 91. His friend Kryschemia Edgecombe writes, for example, that

> Keith is also a dedicated father. He would always remind his son of his manners, to say please and thank you, whenever he was in the salon. I would often hear him giving speeches to his son about being responsible and respectful. He always wanted the best for his son and tried to instill great morals and values into him.

Letter from Kryschemia Edgecombe, Exhibit H. *See also* Letter from Deborah Thompson, Exhibit I. Indeed, being a good father, being there for his son even though he and his son's mother are not together, is extremely important for Mr.

Buie. He is painfully aware how difficult his own childhood was without a father figure in his life, and does not wish his son to experience the same fate.

### D. Conclusion

Keith Buie knows all too well that he has run out of chances. Since he reached adulthood at eighteen, he has endured two terms of imprisonment for involvement in narcotics. Now, at age 32, as the father of a young boy, he is keenly aware that he does not want to, cannot, spend the rest of his years in the vicious circle of committing crimes and serving time. Fortunately, there appears to be light on the horizon. His uncle, Vernon Hunt, reports that despite his current incarceration, Mr. Buie "seems to have a very positive outlook on life and [is] looking forward to doing the right things and making the right decisions, if given the opportunity to resume a productive place back in society." Letter from Vernon Hunt, Exhibit J. Moreover, Mr. Hunt operates a construction business that provides ex-offenders with vocational skills and tools that will allow them to build a productive life for themselves. As he states, "we've already extended our hand of services to have something in place for Keith, and as soon as he is released[d] we can get him started." Id.

Keith Buie served 46 months in 2001 following his federal conspiracy conviction, and 24 months in 2008 following a New York State narcotics conviction. The temptation undoubtedly exists to ratchet up the prison time for this new conviction because arguably Mr. Buie did not "learn" from his prior terms of punishment. I urge the Court, however, to resist that temptation. The deterrent effect of prison time under these circumstances is highly debatable. And whatever deterrent effect a sentence of prison time will have here on Mr. Buie, or more generally, will certainly be served by a 60 months sentence. Moreover, this, like his previous convictions, concerns drug dealing on a very small scale by federal standards. As the national trends in sentencing are beginning to demonstrate, long sentences in non-violent drug cases are no longer rational, reasonable, or serve the public interest. Mr. Buie needs drug treatment, vocational training, job opportunities – not lengthy incarceration. Perhaps he also needed maturity and experience, and the recognition that the street and prison were not where he wanted to spend the rest of his life. It appears that he now has that maturity and recognition, and that he has reached a point in his life where his desire to live productively, to take care of his son, to enjoy a normal life – outweigh the pull of criminality.

For all of these reasons, I sincerely urge the Court to sentence Mr. Buie to 60 months, a term of imprisonment sufficient but not greater than necessary to achieve the aims of sentencing set forth in 18 U.S.C. § 3553(a).

Thank you very much for your consideration.

Respectfully submitted,

Florian Miedel
Attorney for Keith Buie

cc: AUSA Margaret Graham (ECF)
AUSA Shawn Crawley (ECF)

Clerk of Court (ECF)